Theodore CALLAHAN, Petitioner,

v.

**DEPARTMENT OF the NAVY,**
**Respondent.**

**Appeal No. 84–1447 \*.**

United States Court of Appeals,
Federal Circuit.

Nov. 13, 1984.

Michael A. Nardolilli, Baker & Daniels, Washington, D.C., argued for petitioner.

Eileen P. Fennessy, Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Washington, D.C.; Stephanie G. Weldon, Deputy Counsel, and Demetria T. Carter, Associate Counsel, Washington, D.C., of counsel.

Before DAVIS, KASHIWA and NEWMAN, Circuit Judges.

DAVIS, Circuit Judge.

The main issue presented for review is whether the Merit Systems Protection Board (MSPB or Board) erred in conducting a hearing at which petitioner inexcusably failed to appear. A preliminary question is whether petitioner's failure was unjustified. We hold first, that Callahan's non-appearance was inexcusable, and, second, that, when an employee is absent from a Board hearing without justification, the proper procedure is for the Board to consider the case on the agency's investigatory record alone.[1] In order for the Board to

---

\* The MSPB case is No. 04328310028.

1. Because we hold that the hearing itself was improper, we do not consider petitioner's con-

correct its error we vacate its decision 20 M.S.P.R. 590 and remand for further consideration in conformity with this opinion.

I

Petitioner Theodore Callahan was dismissed for unsatisfactory performance (effective October 1, 1982) from his position as a mail clerk at the Naval Research Laboratory (agency) in Washington, D.C. The agency specifically alleged, *inter alia*, that petitioner refused to pick up mail on several occasions, destroyed delivery receipts, and failed to follow security guidelines when handling classified material. Callahan filed a timely appeal with the Board and requested a hearing. By order dated November 16, 1982, the presiding official scheduled a hearing for December 16, 1982 at 9:00 a.m. The order stated that the hearing would take place at the Board's Washington Regional Office in suburban Falls Church, Virginia; the order also provided the office's address and the appropriate room number. In addition the order contained the following paragraph:

> 6. *Failure to Appear.* If a party fails to appear for the hearing, without good cause, the hearing will proceed or the case will be decided on the basis of the existing record. Depending on the circumstances, failure to appear may also result in sanctions.

Petitioner never arrived at the hearing. According to his affidavit, subsequently filed with the Board, he left his home at 7:30 a.m. on the morning of December 16th.[2] Being unacquainted with northern Virginia, petitioner became lost. At 9:30, half an hour after the hearing was scheduled to begin, petitioner telephoned the presiding official. She agreed to wait another hour. At 10:45 petitioner, still lost, called the presiding official and spoke with a receptionist or secretary; she told petitioner that the hearing had begun. At 11:45, still lost but "about to arrive," petitioner again telephoned ahead. The receptionist or secretary informed him that the hearing had ended and that he should go home.

The hearing began at approximately 10:45, apparently just prior to petitioner's second phone call. The agency presented testimony and affidavits from petitioner's co-workers regarding the quality of petitioner's work, his relations with other employees, and other matters which petitioner had disputed during the agency investigation. The agency offered a closing statement, and the hearing ended at 11:45 a.m. The day after the hearing, Callahan called the presiding official and asked for another hearing date which was refused. Shortly thereafter the presiding official permitted the filing of new evidence, but closed the record as of December 30, 1982. Callahan apparently submitted only copies of material already in the record.

On March 4, 1983, the presiding official issued an opinion. She first recounted her version of the events on the morning of the hearing.[3] She then reviewed the evidence, relying heavily on the testimony presented at the hearing.[4] She concluded that the agency had proved its allegations by substantial evidence as required by statute. 5 U.S.C. § 7701(c)(1)(A) (1982).

Petitioner sought review by the full Board. Finding no "error in the reasoning on which the presiding official predicated his [sic] evidentiary findings to warrant a full review of the record," the Board denied the petition.

II

We have no doubt that, on the facts admitted by petitioner (see Part I, *supra* ),

---

tentions regarding the appropriate role of the Board's presiding officials in *pro se* cases.

2. Petitioner and the presiding official tell slightly different versions of what transpired that morning. By repeating the petitioner's version, we do not adopt it as the truth. Under our holding in this case, the precise details of the day's events are unimportant.

3. The presiding official states, for example, that she offered petitioner directions when he first called, but he declined. Petitioner claims that she never so offered. In most particulars, however, the presiding official's and petitioner's versions agree.

4. The presiding official apparently also relied on new affidavits which were not already part of the written record.

his failure to attend the hearing was inexcusable, and not for any sufficient cause. It is unnecessary to couch the problem in terms of "waiver", with its general overtones of an intentional or deliberate act. The question is better phrased in terms of the individual's inadequate justification for failing to appear at the hearing as he should have—comparable to the issue of whether good cause has been shown for extension by the MSPB of a regulatory time limit. Here, it is undeniable that Callahan was lost for at least four hours on his way to the hearing in nearby Falls Church. That is the reason for his failure to turn up, but not a justification. Petitioner simply could not find his way, and there is no assertion that he asked anyone for directions at any time, or looked at a map. But it is plain that he had ample opportunity in the near-month's time between his receipt of the order setting the hearing-date-and-place and the hearing date itself to obtain proper directions to the site. His protests that he was unfamiliar with northern Virginia reinforce the conclusion that it was grossly negligent to continue to blunder aimlessly around that area when he knew the hearing had been set for 9:00 a.m. An MSPB hearing is not a mere social occasion for which unjustified lateness might be acceptable. It was his responsibility—which he did not fulfill—to use reasonable efforts to get there on time.

### III

What was the Board's duty once it had decided—properly, as we have just held in Part II, *supra*—that petitioner had no good excuse for failing to appear at the hearing? The Board's practice where the employee is absent from an ordered hearing has not been uniform. In *Banko v. Department of the Navy*, 11 MSPB 514 (1982), the employee informed the Board that he would not attend the hearing. The Board ruled that the presiding official did not err by conducting a hearing anyway. A similar situation arose in *Webster v. Government of the District of Columbia*, 7 MSPB 176 (1981), but the Board found no error when the presiding official decided the case on the record without taking further evidence. Apparently, the Board feels that the employee's failure to appear at a scheduled hearing grants the presiding official a full measure of discretion as to the proper procedure. We cannot agree.

■ In the Civil Service Reform Act of 1978 (Reform Act), Congress granted employees subject to adverse personnel actions the right to a hearing before the Board. 5 U.S.C. § 7701(a)(1) (1982). The Board's regulations provide that the hearing is not automatic, but is at the option of the employee:

> *Right to hearing.* Under 5 U.S.C. 7701, an appellant has a right to a hearing. Alternatively, the appellant may choose to have the determination based on the record.

5 C.F.R. § 1201.24(c) (1984). Significantly, the agency has no statutory right to a hearing. Under Board regulations, an agency may request a hearing, but the final decision on that request rests with the discretion of the presiding official. *Id.* at § 1201.25(b). The Board has recognized, however, that Congress explicitly granted the right to employees and not to agencies; announced Board policy has therefore been to disfavor agency requests for a hearing if the agency seeks merely to fill gaps in the record. Merit Systems Protection Board, *Final Rules of Organization and Procedure*, 44 Fed.Reg. 38342, 38343 (1979).

Congress included the provision on hearings in the Reform Act in order to "protect the right [sic] of employees" and to guarantee "a full and fair consideration of their case." S.Rep. No. 969, 95th Cong., 2d Sess. 51, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2773. Congress took its cue from the Supreme Court's decision in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). *Id.* In *Arnett*, the Court held that the hearing procedures developed by the Office of Economic Opportunity and the Office of Personnel Management (prior to the Reform Act) satisfied the requirements of the Due Process Clause. The Court stated that "the purpose of the hearing in such a case is to

provide the person 'an opportunity to clear his name.'" 416 U.S. at 157, 94 S.Ct. at 1646 (plurality opinion). Congress in the Reform Act substantially adopted the procedure approved by the Court and charged the Board with "the job of protecting the rights of employees." 124 Cong.Rec. 28,-714 (1978) (statement of Congressman Harris).

■ All indications, therefore, lead to the conclusion that Congress intended the hearing to be for the employee's benefit. Nonetheless, if the employee forfeits the right which Congress conferred, he must forego the benefits. The employee cannot later demand the opportunity "to clear his name" by supplementing the record or supplying testimony. *See Webster, supra.*

■ In this case, however, the Board went to the opposite extreme. The presiding official heard testimony from agency employees regarding facts disputed by petitioner, and apparently accepted new affidavits from other employees not in attendance. Her decision indisputably reflects her strong reliance on oral testimony that petitioner never heard at the time, never had a real chance to contradict or explain, and never had the opportunity to inquire into by way of cross-examination. This is precisely contrary to Congress' purpose when it created the hearings procedure so that employees could rebut agency charges personally. It is also plainly contrary to the Board's established position that the hearing is not to be an opportunity for an agency to buttress a weak or inconclusive record.

■ The agency argues that an employee who requests a hearing and then inexcusably fails to attend must live with the choice, including any evidence that the agency introduces. In support of that point, the agency points to 5 C.F.R. § 1201.24(c), set forth *supra*, which lists the employee's options in the alternative—either a hearing *or* a decision on the record.

The implication, it is said, is that once a hearing is chosen, the employee is bound by that choice even though he fails to appear. We do not read the regulation to be so harsh. First, the agency's reading conflicts with congressional intent and the Board's own position on the nature and purpose of a hearing. Second, a more natural reading is that the regulation gives the employee the option of a hearing to supplement the record *in addition to* a consideration of the record already compiled during the agency investigation. If the employee forfeits the opportunity for a hearing, the alternative—a decision on the record alone—is required.[5]

Nor should the decision whether to hold a hearing in the employee's unjustifiable absence be left to the presiding official. For one thing, there would normally be little basis for making a reasoned choice at the moment of non-appearance when the choice would have to be made. More importantly, the congressional purpose to have the hearing held for the employee's benefit (not the agency's), taken together with the fundamental values incident in the opportunity to confront and cross-examine witnesses, strongly suggest that a hearing with live witnesses should never be forced upon an employee who has forfeited or abandoned his right to a hearing.

By our ruling, we do not mean to grant a license to disgruntled employees who may call for a hearing, put the agency and the Board to the trouble and expense of preparation, and then fail to appear at the last minute. Nor do we think this will be the result. The hearing is the employee's only opportunity to probe anew the factual portion of his case before an impartial tribunal, and thus will not be cavalierly or lightly disregarded.[6] Second, the Board may impose sanctions where appropriate. 5 C.F.R. § 1201.43 (1984). *See* also paragraph 6 of the order quoted *supra*, p. 2. These safeguards will serve to deter those

---

5. Moreover, in its letter to petitioner, the Board warned that failure to attend the hearing might result in a decision based on the record alone. The agency's position in this matter thus conflicts with that of the Board itself.

6. Court review of the Board's factual determinations is severely circumscribed. 5 U.S.C. § 7703(c) (1982).

who might otherwise enjoy the opportunity to inconvenience their former employers.

We therefore vacate the Board's decision and remand for reconsideration of petitioner's case on the record developed by the agency during its investigation.[7]

*Vacated and Remanded.*

**7.** We do not pass on the MSPB's right in this or other cases, if the Board regulations permit, to supplement the written record by further affidavits or documents, provided that the employee has access to that new material and can similarly supplement the record by written material. Nor, of course, do we prohibit the Board from setting a new hearing if the Board and the employee both so desire.