**Anthony R. SANDERS, Petitioner,**

**v.**

**UNITED STATES POSTAL SERVICE, Respondent.**

**Appeal No. 85–2722.**

United States Court of Appeals, Federal Circuit.

Sept. 22, 1986.

James E. Eggleston, Mocine & Eggleston, Oakland, Cal., argued for petitioner.

Terrance S. Hartman, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director; Stephen E. Alpern, Associate General Counsel and Lori Joan Dym, Office of Labor Law, U.S. Postal Service, of counsel.

Before SMITH, Circuit Judge, BENNETT, Senior Circuit Judge, and ARCHER, Circuit Judge.

BENNETT, Senior Circuit Judge.

Petitioner Anthony R. Sanders appeals the decision of the Merit Systems Protection Board (MSPB or board), pursuant to 5 U.S.C. § 7703(b)(1) (1982), which affirmed the action of the United States Postal Service in removing him from his position as a clerk at the Pleasanton, California post office, effective February 6, 1985, for dealing in the sale of cocaine. We affirm.

## BACKGROUND

We summarize the essential facts as stated in the findings and opinion by the presiding official of the MSPB on May 10, 1985, and as illustrated by the supporting documents supplied to us by the parties from the record before the MSPB.* The cocaine charge was that Sanders first discussed a proposed sale of the prohibited substance on postal property while on duty and later consummated the sale at a private residence while off duty. A confidential informant (CI) working for the Pleasanton police made the initial contact on July 9, 1984. The next day two Pleasanton policemen, Sergeant Detata and Officer Graves, together with Postal Inspector Gordon, watched the post office while the CI entered to contact Sanders again. When the CI came out he advised the officers that he was to meet Sanders at noon and he did so on the post office parking lot. The CI thereafter reported that he was to meet Sanders that afternoon at the Pleasanton Lounge. From the lounge, the CI and Sanders departed in the latter's automobile, followed by the officers who, however, lost them in the traffic. Later in the day the CI reported to the officer that while he waited in the car in Berkeley Sanders entered a house with $200 purchase money supplied by the CI, which had been provided by Inspector Gordon, and returned with a package of white powder which he transferred to the CI, stating that it was cocaine. The CI turned the substance over to the police who verified that it was cocaine through a chemical test by the Drug Enforcement Crime Laboratory in San Francisco.

In his written reply to the agency charge and by his oral reply made through his union representative, Sanders stated that he did not sell cocaine to anyone. He did not deny that his contacts with the CI took place as alleged and as witnessed by the officers. When the agency charge was sustained, an appeal was taken to the

---

* Petitioner's motion to supplement the joint appendix with documentary materials not presented to the MSPB as a part of the administrative record is denied. *Callahan v. Department of the Navy,* 748 F.2d 1556 (Fed.Cir.1984); *Lizut v. Department of the Army,* 717 F.2d 1391 (Fed.Cir. 1983).

MSPB. In his notice of appeal, Sanders expressly waived his right to a hearing. This precluded the grant of the agency's request for a hearing to present live testimony. *Callahan v. Department of the Navy*, 748 F.2d 1556 (Fed.Cir.1984).

The evidence presented to the MSPB consisted of the agency file of sworn and unsworn statements contained in the investigative and police reports. The evidence in rebuttal consisted of Sanders' unsworn denials, both in his written reply to the charges and in his petition of appeal to the MSPB. The presiding official stated that his decision turned on his assessment of the probative value of these conflicting hearsay statements.

The presiding official properly observed that in order for the agency to prevail it had to support its case by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B) (1982). That standard only requires evidence that a reasonable person would accept as sufficient to find a contested fact more probably true than untrue. 5 C.F.R. § 1201.56 (1986). Using this standard, he found the CI's double hearsay statement to be more believable than Sanders' hearsay denial. He found the statements of the police to be credible in their entirety. In corroboration of the CI's statement, the presiding official referred to the facts that Inspector Gordon supplied government funds to the CI to buy the cocaine, that the CI had reported to the officers that he was attempting to arrange the purchase, that the officers saw the two men meet on the post office parking lot and at the Pleasanton Lounge and followed them, and that the CI produced the cocaine following his automobile trip to Berkeley with Sanders. Weight was also given to the failure of Sanders to explain his meetings with the CI and the automobile trip to Berkeley with him.

The agency was required to demonstrate that the removal action promoted the efficiency of the service. 5 U.S.C. § 7513(a) (1986). A nexus between the conduct and the efficiency of the service may be presumed where the conduct is egregious and has an obvious adverse effect on the efficiency of the service. This is true even where the conduct is off duty. Here the presiding official concluded that since Sanders and the CI met twice on agency premises to arrange the sale, it was on-duty conduct and that a nexus existed.

In assessing the penalty, the agency relied not only on the cocaine sale but on six prior disciplinary actions of Sanders, all in 1984, for time and attendance problems. These offenses were represented by four letters of warning and two suspensions of 7 calendar days each. It was noted that Sanders had worked less than 3 years for the Postal Service and that, under prior decisions of the MSPB involving drug sales, the penalty of removal was reasonable. Insufficient mitigating factors were found to affect the penalty of removal. *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981). Sanders did not seek review of the decision of the presiding official which, accordingly, became the final decision of the board. 5 C.F.R. § 1201.113 (1986).

## OPINION

On appeal Sanders now argues that his discharge was not according to law because the Postal Service did not meet its burden to establish that he engaged in the misconduct, asserted as the basis of his removal, by a preponderance of the credible evidence. Sanders argues that the evidence was all hearsay, double and triple, and that the whole episode was a scheme to entrap him into becoming a criminal informant by inducing him to commit a criminal act, charges for which were dismissed by the district attorney in 1985 for lack of evidence. The hearsay consisted first of the informant's allegations about his conversations with Sanders as reported to Police Officers Detata and Graves. From this hearsay, Graves prepared an undated police report which was used by Inspector Gordon to prepare an investigative memorandum on December 10, 1984, and a supplemental memorandum on December 20, 1984, which he submitted to the Pleasanton

postmaster for his consideration of possible disciplinary action.

Sanders takes particular exception to the police report which he says was unsigned and explicitly did not recommend further action. The report was printed by hand. The name "Graves," in the box entitled "Recording Officer," was also printed by hand. A box at the bottom of the form was marked "No" under "Further Action." Sanders was not arrested, detained, nor questioned at the time of the July 10, 1984 incident, and no disciplinary action was taken against him at that time. These considerations are submitted to buttress the argument that a preponderance of credible evidence does not support the finding that Sanders in fact committed the alleged sale of cocaine to the CI. It is therefore contended that the hearsay evidence is not inherently credible or reliable here and is legally insufficient to establish by a preponderance of the evidence that Sanders was involved in a crime.

It is well established that hearsay evidence may be substantial evidence in an administrative proceeding if there are circumstances which give it credibility and probative value to a reasonable mind. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229–30, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938); *Darsigny v. OPM*, 787 F.2d 1555 (Fed.Cir.1986); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1538 (Fed.Cir. 1984); *Campbell v. FAA*, 735 F.2d 497, 502 (Fed.Cir.1984); *Diggin v. United States*, 661 F.2d 174, 228 Ct.Cl. 578 (1981); *Duvall v. United States*, 647 F.2d 131, 227 Ct.Cl. 245 (1981); *Cooper v. United States*, 639 F.2d 727, 226 Ct.Cl. 75 (1980); *Schaefer v. United States*, 633 F.2d 945, 224 Ct.Cl. 541 (1980); *Wathen v. United States*, 527 F.2d 1191, 208 Ct.Cl. 342 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *Jacobowitz v. United States*, 424 F.2d 555, 191 Ct.Cl. 444 (1970). What these and innumerable other precedents make clear is that administrative decisions based on hearsay must be evaluated on a case-by-case basis to determine if the hearsay is inherently truthful and more credible than the evidence offered against it. Therefore, hearsay has been held to be substantial evidence in some cases and not in others.

■ In the case at hand, the presiding official correctly placed the burden of proving the charges by a preponderance of the evidence upon the postal service which then proceeded to make a prima facie case. Having done so, the burden of going forward with the evidence to rebut that showing shifted to Sanders who was in the best position to disprove it. *Schapansky v. Department of Transportation, FAA*, 735 F.2d 477, 482–83 (Fed.Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). Sanders sought to rebut with his uncorroborated flat denial. He never did explain to the MSPB his conduct with the confidential informant. He made no sworn statement to show how the police were wrong or that he was right. There is a strong presumption in the law that administrative actions are correct and taken in good faith. It takes "well-nigh irrefragable proof" to overcome the presumption. *Fucik v. United States*, 655 F.2d 1089, 228 Ct.Cl. 379 (1981); *Gaskins v. United States*, 652 F.2d 70, 227 Ct.Cl. 563, 566 (1981); *Diggin*, 661 F.2d at 178. Sanders failed to present any proof and only attacked the quality of the government's evidence. True, the paperwork of the police was not exemplary. But, it was all the MSPB had to go on and it was evidence which, as to its accuracy, was sworn to by Postal Inspector Gordon before Sanders was removed.

■ Sanders next argues that the evidence against him was unreliable, not only because of hearsay but because the Postal Service was initially reluctant to identify the undercover agent. But, his identity was disclosed in the police reports which were in evidence before the MSPB, and Sanders engaged in no discovery. Further, he knew the CI sufficiently well to engage in undenied conversations and an automobile trip with him. Sanders did not raise the identity issue before the MSPB. It is

well established that generally, absent a nonfrivolous constitutional challenge, an issue cannot be raised for the first time in a judicial appeal. *Cecil v. Department of Transportation,* 767 F.2d 892 (Fed.Cir. 1985); *Lizut v. Department of the Army,* 717 F.2d 1391 (Fed.Cir.1983); *Grover v. United States,* 200 Ct.Cl. 337, 345 (1973). This issue is impermissible and frivolous.

Further, it would be a most peculiar and unjust procedure to permit Sanders to overcome the government's documentary evidence on the grounds of hearsay when he offers nothing to counter it but his unsworn, self-serving denial and is the one who precluded the government from offering live testimony, subject to cross-examination, by waiving a hearing, which under our precedent prevented the presiding official from granting the government's request for a hearing. *Callahan v. Department of the Navy,* 748 F.2d at 1559. He cannot have it both ways. Furthermore, the presiding official of the MSPB set forth his reasons for concluding, on the record before him, that the government's evidence was entitled to the greater credibility. We cannot fault him for this exercise of discretion in the circumstances of this case.

■ Sanders makes the further argument that the presiding official abused his discretion in not exercising his authority under 5 C.F.R. § 1201.41 (1986) to conduct a fair and impartial hearing by ordering the production of evidence bearing on petitioner's uncorroborated denial of the agency charges against him and explaining his contacts with the CI. Careful reading of the cited regulation shows that it relates to hearings. Sanders waived his right to a hearing. When he filed his appeal with the MSPB, it was acknowledged by the board with explicit instructions as to how he should proceed, including the statement: "If no hearing is requested, a Presiding Official will adjudicate the appeal on the record after giving the parties the opportunity to file written submissions." That is what happened here. It was all that the law required. *Callahan,* 748 F.2d at 1559.

Sanders ignored his opportunity to supplement the record.

A final important issue in the appeal remains. Under 5 U.S.C. § 7513(a) (1986), a federal employee may be removed "for such cause as will promote the efficiency of the service." *Crofoot v. Government Printing Office,* 761 F.2d 661, 664 (Fed.Cir. 1985). This requires that there be a nexus between the employee's misconduct and the efficiency of the service. The nexus may be established either by specific evidence or by the nature of the conduct if it is so egregious as to "speak for itself." *Graybill v. U.S. Postal Service,* 782 F.2d 1567 (Fed.Cir.1986) (removal for criminal sexual misconduct upheld). Here the presiding official found that there was a nexus because the planning for the cocaine sale was held on agency premises and qualified as the equivalent of an on-duty sale. Egregious criminal conduct justifies a presumption that the required nexus has been met, even when the drug offenses have occurred off duty. *E.g., Borsari v. Federal Aviation Administration,* 699 F.2d 106 (2d Cir. 1983), *cert. denied,* 464 U.S. 833, 104 S.Ct. 115, 78 L.Ed.2d 115 (1983) (removal of employee for off-duty sale and possession of marijuana and possession of cocaine upheld); *Stump v. Department of Transportation, FAA,* 761 F.2d 680 (Fed.Cir.1985) (removal of employee for off-duty possession and use of cocaine upheld); *Masino v. United States,* 589 F.2d 1048, 218 Ct.Cl. 531 (1978) (removal of customs officer for off-duty use of marijuana upheld). The Postal Service found that Sanders' conduct was inconsistent with the trust and confidence that it placed in him as he handled papers and property belonging to the public and to the government. Public confidence in the integrity of the mails was also involved.

Sanders denies that a nexus exists here because he was not removed from his position in July 1984 when the alleged offense was committed. It was not until January 10, 1985, that Sanders was given notice of his proposed removal, based on the cocaine incident and certain other matters no longer in issue. Sanders' written reply to the

notice was a flat denial of the charge, as previously observed. He made no personal reply but was represented by his union business agent. The agent reiterated the denial and added a claim that the delay in the notice of threatened action was in retaliation for Sanders' refusal to become an undercover informant for postal inspectors and that he had been entrapped in order to force him into such an agreement. On February 1, 1985, the postmaster at Pleasanton sent Sanders a letter stating that he would be removed effective February 6, 1985. The letter stated in part: "Neither you, the union, nor my subsequent investigation produced any evidence to support allegations of 'Attempted Entrapment' and/or 'Retaliation for Failure to Become Undercover Informant for Postal Inspectors.' "

■ Petitioner's separation and appeals followed in due course. The delay between the offense and removal for the efficiency of the service is advanced to make the argument that, if Sanders' conduct was so bad that the efficiency of the service required his removal, it would not have taken 7 months to reach this conclusion. This is a weakness in the government's case but without more it does not prove the allegation of entrapment nor disprove the decision that removal for this egregious conduct was for the efficiency of the service. Importantly, it does not demonstrate harmful regulatory procedural error which would vitiate the action taken. *Shaw v. U.S. Postal Service*, 697 F.2d 1078 (Fed. Cir.1983).

The court agrees with petitioner that a removal to promote the efficiency of the service cannot be supported by speculative harm to agency operations nor by parroting the language of the statute. The agency must demonstrate a rational basis for its conclusion that a discharge will promote efficiency. A nexus between misconduct and efficiency of the service cannot be inferred, absent egregious conduct. This court has consistently so held. But, it has also long held that agencies are vested by law with the discretionary authority and responsibility to determine what is necessary for their efficiency in discharging the missions assigned to them by Congress and this must be determined on the merits of each individual case. No appellate court has the institutional competence or authority to find facts to determine what is for the efficiency of the service. A presumption of good faith attends agency actions. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). We discharge our responsibility of appellate review when we decide whether a contested decision complies with applicable statutes and regulations and whether it has a rational basis supported by substantial evidence and is not arbitrary, capricious, or otherwise unlawful. 5 U.S.C. § 7703(c); *Hayes*, 727 F.2d at 1537–39.

## CONCLUSION

■ With the foregoing guidelines constantly in mind, we have evaluated all of the arguments set forth in the briefs, the exhibits constituting the record before the Merit Systems Protection Board, and the board's opinion. We hold that the decision to remove this employee for the efficiency of the service had a rational basis, did not violate due process requirements, was without harmful error, was supported by substantial and competent evidence, and was not arbitrary or capricious or an abuse of discretion or otherwise unlawful.

AFFIRMED.