Terrell E. PARKER, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 03–3308.

United States Court of Appeals, Federal Circuit.

DECIDED: March 4, 2004.

Terrell E. Parker, Johnston, RI, pro se.

William K. Olivier, Principal Attorney, Harold D. Lester, Jr., David M. Cohen, Department of Justice, of Counsel, Earl A. Sanders, Office of Personnel Management, of Counsel, Washington, DC, for Respondent.

Before MICHEL, LOURIE, and DYK, Circuit Judges.

PER CURIAM.

Terrell Parker appeals from the Merit Systems Protection Board's July 11, 2003

reconsideration decision reversing its January 2, 2002 decision and affirming a November 15, 1996 remand decision of the Office of Personnel Management ("OPM") disallowing Mr. Parker's application for retirement benefits. *Parker v. Office of Pers. Mgmt.,* 93 M.S.P.R. 529 (M.S.P.B. 2003) (*"Parker II"*). We *affirm.*

## BACKGROUND

From 1968 to 1985, Mr. Parker was a civilian National Guard Technician ("NGT") in the Rhode Island Army National Guard ("RIARNG"). In February 1985, Parker accepted an Active Guard Reserve ("AGR") appointment with RIARNG, and was accordingly separated from his NGT position. Shortly thereafter, Parker withdrew all of the contributions that he had made to the Civil Service Retirement and Disability Fund ("CSRDF") through payroll deductions during his years of civilian service under the Civil Sevice Retirement Service ("CSRS"). *Parker II,* 93 M.S.P.R. at 531–32, slip op. at 2.

On May 23, 1991, Parker requested retroactive leave without pay ("LWOP") status from his NGT position for the period of his AGR service, and on June 10, 1991, he requested reinstatement in the civil service at his previous grade level pursuant to the Veterans' Reemployment Rights Act ("VRRA"), 38 U.S.C. §§ 4301–4307 (2000). Both requests were denied by the Office of the Adjutant General of Rhode Island ("OAGRI") on June 19, 1991, and Parker appealed to the Board. *Parker II,* 93 M.S.P.R. at 531–32, slip op. at 2. On July 31, 1991, Parker was separated from the AGR when his tour of duty ended, and he accordingly lost his membership in RIARNG. *Id.*

On February 25, 1992, Parker and RIARNG entered into an agreement settling Parker's dispute on appeal. Under

the terms of the settlement agreement, RIARNG agreed to pay Parker $8050 (less required withholdings) and to appoint him to a civilian technician position as an Employee Relations Specialist ("ERS"), despite the fact that National Guard membership was required under 32 U.S.C. § 709(b) as a condition of employment in such positions. Parker, in return, agreed to dismiss his appeal with prejudice, to withdraw certain other pending claims, and to waive entitlement to thirty days' advance notice of termination. The Board accordingly dismissed Parker's appeal, and on February 28, 1992, RIARNG issued a "Notification of Personnel Action" ("SF–50") purporting to appoint Parker to the ERS position. *Id.* at 532–33, 3. On the same day, the OAGRI sent Parker a letter "separating" him from the ERS position, as a result of his having lost his membership in RIARNG the previous year.[1] Three days later, Parker applied for an immediate retirement annuity. *Id.* at 532–33, 3–4.

The Office of Personnel Management ("OPM") made an informal determination that Parker did not meet the statutory requirements for an immediate retirement benefit, because 5 U.S.C. § 8333(b) requires that an employee serve at least one year of creditable civilian service within the two years immediately preceding the separation on which the annuity is based. *Id.* at 533, 4. Because Parker had served at most four days (*i.e.*, February 28, February 29, March 1, and March 2) in a CSRS-covered position within the two years pre-

ceding his March 2, 1992 separation, Parker clearly did not qualify under § 8333(b).

Apparently in an attempt to avoid the statutory requirements, RIARNG then cancelled Parker's February 28, 1992 SF–50 and issued three new SF–50s on March 26, 1992. *Id.* The first of those indicated that Parker had been appointed to the ERS position on June 4, 1990; the second indicated that Parker was placed in LWOP status from June 4, 1990 to February 27, 1991; and the third indicated that Parker was placed in LWOP status from February 27, 1991 to February 28, 1992. *Id.* Based on those new "appointment" documents, Parker asked OPM for reconsideration. On March 16, 1993, OPM formally denied Parker's application. *Id.* Parker then sought reconsideration again. *Id.*

On December 15, 1993, OPM issued a reconsideration decision affirming its March 16 initial decision and seeking to recoup $7647 in interim retirement benefits that had apparently been paid to Parker prior to the denial of his application. Parker requested reconsideration again in January 1994 and yet again in August 1995, and then, without waiting for any decision from OPM, filed a submission to the Board in November 1995, asserting that he was entitled to an annuity as a result of the enactment of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4333 (2000).[2] *Parker II,*

---

1. National Guard membership is required as a condition of employment as a technician. 32 U.S.C. § 709(b) (1988). Under the version of 32 U.S.C. § 709(e) that was in force in 1992, "a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard ... shall be promptly separated from his technician employment by the adjutant

general of the jurisdiction concerned." *Id.* § 709(e)(1).

2. The basis upon which the Board exercised jurisdiction to consider Parker's submission is unclear. The deadline for appealing from OPM's December 15, 1993 decision–the last appealable decision that OPM issued prior to Parker's November 1995 submission to the Board–was January 9, 1994. Thus, Parker's appeal appears to have been filed more than

93 M.S.P.R. at 534, slip op. at 5. In view of that legislation, the administrative judge ("AJ") vacated OPM's December 15, 1993 decision, and remanded to OPM for reconsideration. *Id.*

On remand, OPM affirmed its December 1993 decision, noting that although USERRA amended 5 U.S.C. § 8331(13) to provide that certain active duty service in the National Guard can be creditable toward a CSRS retirement annuity, that provision covered only National Guard service that "interrupt[ed] creditable civilian service under this subchapter and [was] followed by reemployment in accordance with chapter 43 of title 38."[3] *Id.* Because Parker was reappointed pursuant to the February 1992 settlement agreement with RIARNG, rather than under chapter 43, OPM concluded that Parker's AGR service did not meet the criteria for application of USERRA, that he was not otherwise entitled to an annuity, and that he had not shown entitlement to a waiver of recovery of overpayment. *Id.* at 534–35, 5–6.

In December 1996, Parker appealed again. The AJ again reversed OPM, finding that Parker was entitled to an annuity. *Id.* at 534–35, 6. OPM then petitioned the full Board for review of the AJ's decision. In a 2–1 decision, the Board denied OPM's petition, but reopened the appeal on its own motion under 5 C.F.R. § 1201.118, and affirmed the AJ's decision. *Parker v. Office of Pers. Mgmt.,* 93 M.S.P.R. 529 (M.S.P.B.2002) ("*Parker I*"). OPM requested reconsideration of the full Board's decision under 5 U.S.C. § 7703(d) pursuant to 5 C.F.R. § 1201.119. *Parker II,* 93 M.S.P.R. at 531, slip op. at 1. The two Board Members who had previously formed the 2:1 majority had meanwhile left the Board, leaving only the former dissenter and, later, a new Member. The newly constituted Board granted OPM's request for reconsideration and, in the decision that is the basis for the present appeal, reversed the Board's January 2, 2002 decision and affirmed OPM's November 15, 1996 disallowance of Parker's application for CSRS annuity. *Parker II,* 93 M.S.P.R. at 544, slip op. at 18.

Parker timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jacobs v. Dep't of Justice,* 35 F.3d 1543, 1546 (Fed.Cir.1994) (quoting *Consol. Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The burden upon the petitioner of establishing any deficiencies in the administrative decision is a heavy one, because there is a presumption that administrative actions are correct and that government officials act in good faith in discharging their duties. *Sanders v. U.S. Postal Serv.,* 801 F.2d 1328, 1331 (Fed.Cir.1986).

---

twenty-two months beyond expiration of the twenty-five-day period allowed for filing an appeal, and more than ten months after the enactment of USERRA itself.

3. Prior to the enactment of USERRA, National Guard service was not creditable.

On appeal, Parker argues that "the Board should not have granted OPM's request for reconsideration because OPM is collaterally estopped from raising any arguments not raised in the initial hearing, OPM having agreed in the prehearing to limit issues exclusively to the application of Chapter 43, Title 38." However, 5 C.F.R. § 1201.119 authorizes the Director of OPM to petition for reconsideration of a Board order under 5 U.S.C. § 7703(d) if she determines "(1) [t]hat the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management, and (2)[t]hat the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive." Moreover, even if OPM had somehow limited itself to raising arguments relating exclusively to chapter 43, it is clear that the Board's January 2, 2002 decision misinterpreted the provisions therein and that the Board properly granted OPM's petition for reconsideration. As we explain below, the Board in *Parker II* correctly determined that Parker's "appointment" could not have been taken under chapter 43.

Parker also argues that "[t]he Board's current order represents an impermissible attempt to reverse factual findings made in the Board's original order." In particular, Parker asserts that the Board previously found that he had satisfied the requirements of 5 U.S.C. § 8333(b) because his AGR service had interrupted creditable civilian service and constituted "military

service" within the meaning of 5 U.S.C. § 8331(13), and also that RIARNG's 1992 and 1990 "appointment" actions were "a legitimate attempt by the RIARNG to ensure that it remedied its admitted violations of the appellants [sic] rights under the VRRA."

■ Contrary to Parker's suggestion, the Board's reconsideration decision did not depend on the reversal of any factual findings, but rather on the controlling laws and regulations, for there is no set of operative facts that can reasonably be drawn from the present record under which Parker would be entitled to the benefit of USERRA.[4] Although USERRA amended the definition of "military service" in § 8331(13) to extend to certain National Guard duty that interrupts creditable civilian service, that amendment applies only with respect to reemployment "in accordance with chapter 43 of title 38 that occurs on or after August 1, 1990." 5 U.S.C. § 8331(13) (2000). Parker's "appointments"[5] were neither "in accordance with chapter 43 of title 38" nor purported to have occurred "on or after August 1, 1990." Chapter 43 provides reemployment rights only to persons who are "absent from a position of employment by reason of service in the uniformed services if such person[s]' cumulative period of service in the uniformed services, with respect to the employer relationship for which the person seeks reemployment, does not exceed five years." 38 U.S.C. § 4312(c) (2000). On the contrary, Parker's service "in the uni-

---

4. In light of our disposition we need not decide whether the Board was correct in holding that USERRA is not retroactive to separations occurring before 1994.

5. As the government has pointed out, even Parker's February 28, 1992 appointment is suspect. The settlement agreement between RIARNG and Parker purported to appoint Parker to an ERS position, but was contrary to law because Parker was statutorily barred

under 32 U.S.C. § 709(b) from occupying that position. The agreement appears to have simply been an invalid attempt to create entitlement to a retirement annuity under CSRS. The agreement was also contrary to law because it voluntarily arranged a supposedly "involuntary" separation as a basis for discontinued service retirement under 5 U.S.C. § 8336(d)(1).

formed services" stretched from February 1985 to July 1991, *i.e.*, more than six years. Even as of Parker's backdated "appointment" date of June 4, 1990, he had already been in AGR service for more than five years and two months, and was accordingly ineligible for an appointment under chapter 43. Furthermore, even if chapter 43 had been applicable, Parker's asserted June 4, 1990 appointment date is prior to August 1, 1990, and therefore is not within the scope of § 8331(13) as amended by USERRA.[6]

■ Parker also contends that he had "almost 30 years of creditable service" and "was over 50 years of age" when he was separated from RIARNG on July 31, 1991, so that he is accordingly qualified for and should be granted an immediate retirement annuity. Although 5 U.S.C. § 8336(d)(1) provides for an immediate retirement annuity for employees who have been separated from the service involuntarily (except by removal for cause on charges of misconduct or delinquency) after having either completed 20 years of service and attained age 50 or completed 25 years of service, that provision is inapplicable here. Because Parker's February 28, 1992 "appointment" was contrary to law, he held no position from which he could be "separated," and therefore cannot qualify for an annuity under § 8336(d)(1). Further, the alternative statutory bases for immediate retirement eligibility for employees such as Parker require that the employee must complete at least 30 years of service and reach age 55 before the date of separation, 5 U.S.C. § 8336(a) (2000); that he complete at least 20 years of service and reach age 60 before the date of separation, *id.* § 8336(b); or that he complete at least five years of service and reach age 62 before the date of separation upon which the claim for entitlement to annuity is based, *id.* § 8336(f). Parker did not qualify under any of those provisions.[7]

We have considered Parker's other arguments and find them unpersuasive.

### CONCLUSION

The Board's reconsideration decision was supported by substantial evidence; was not obtained without any procedures required by any law, rule, or regulation having been followed; and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Board's decision is therefore affirmed.

---

6. Of course, Parker's February 28, 1992 appointment date was after August 1, 1990, but use of that date would cause Parker's claim to fail as well, under 5 U.S.C. § 8333(b). Even apart from the fact that the February 28, 1992 appointment was forbidden under 32 U.S.C. § 709(b), *see supra* note 4, 5 U.S.C. § 8333(b) requires an employee to have completed at least one year of service in a CSRS-covered civil service position during the two-year period immediately preceding the separation on which the claim for annuity is based. That requirement cannot be circumvented using invalid appointment forms.

7. Section 8336 also includes numerous other provisions applicable to, inter alia, certain law enforcement officers, firefighters, air traffic controllers, members of Congress, members of the executive branch of the government, employees of the Panama Canal Commission, employees of the Bureau of Indian Affairs, employees of the Indian Health Service, employees of tribal organizations, and judges, 5 U.S.C. § 8336(c), (d)(2), (e), (g)-(m) (2000), none of which are relevant here.