NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HARMAN KEYS,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-2087

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-6789, Judge Scott Laurer.

---

Decided:  February 15, 2023

---

HARMAN KEYS, Indianola, MS, pro se.

SARAH E. KRAMER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY; AMANDA BLACKMON, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, CUNNINGHAM, and STARK, *Circuit Judges.*

PER CURIAM.

Harman Keys appeals from the decision of the United States Court of Appeals for Veterans Claims ("the Veterans Court") affirming a Board of Veterans' Appeals ("the Board") decision that denied Keys' "motion for revision" requesting assignment of an earlier effective date based on clear and unmistakable error ("CUE") in March 13, 1986, and June 20, 1986 rating decisions. *Keys v. McDonough*, No. 20-6789, ECF No. 13-1, J.A. 16–26 (Vet. App. Apr. 25, 2022) ("*Decision*"). For the reasons detailed below, we *dismiss* Keys' appeal for lack of jurisdiction.

## BACKGROUND

Keys served on active duty from May 1979 to August 1983. In October 1985, Keys filed a claim for disability benefits for a sinus tumor. In March 1986, the regional office ("RO") issued a rating decision. In its decision, the RO noted that Keys had undergone a frontal craniotomy during service to remove a frontal sinus tumor ("mucocele") that caused headaches and eye bulging ("exophthalmos"). The RO then granted service connection for status post craniotomy, which involved a frontal excision of right frontal mucocele that had invaded anterior cranial fossa with burr holes, and bilateral rhinotomy scars and frontal craniotomy scar, both of which were well-healed and nontender. The RO issued a 10 percent rating effective October 2, 1985.

In June 1986, following additional examination to evaluate residuals of the craniotomy, the RO determined that the sinus growth no longer affected Keys' sinuses and that residuals were found to involve facial scars and burr holes for which the RO awarded a separate rating. Keys did not appeal either of the rating decisions, which became final.

Fifteen years later, in July 2001, Keys submitted a 1982 medical report and stated that the RO had not

considered his complaints of headaches, dizziness, and an eye condition in adjudicating his claim or considered that the mucocele affected his brain. In July 2002, the RO issued a decision and found that those conditions had been addressed in its prior 1986 rating decisions, which were final. The RO then accepted Keys' medical report submission as a request to reopen his claim and granted service connection for optic nerve compression with exophthalmos, rated at 10 percent, effective July 26, 2001. The RO determined that an earlier effective date was not warranted because Keys did not request to reopen his claim for that condition prior to his July 2001 letter. Service connection was also established for dizziness due to head trauma, rated at 10 percent, effective July 26, 2001.

In August 2002, Keys filed a notice of disagreement challenging the effective dates assigned for the awards of service connection made in the RO's 2002 rating decision, but he later withdrew his appeal of those claims. In September 2002, Keys was awarded total disability based on individual unemployability ("TDIU") benefits. He did not appeal that rating decision, and the July 2002 and September 2002 rating decisions became final.

In December 2008, Keys filed a claim seeking earlier effective dates for his eye disability, headaches, dizziness, and TDIU. In May 2009, the RO denied the earlier effective date claims, and Keys subsequently submitted correspondence which the RO construed as a notice of disagreement. In his notice of disagreement, Keys alleged CUE, arguing that he reported symptoms of headaches, dizziness, and white balls in his vision during a 1986 medical examination, yet service connection for those conditions was not granted until 2002. The RO issued a rating decision in June 2009 that found no CUE in the assignment of effective dates. The RO continued to deny those claims in an April 2011 statement of the case. Keys then submitted a brief to the Board in May 2014 and argued that the 1986 examination incorrectly found no neurological

abnormalities.  He moved for "revision" requesting assignment of an earlier effective date based on CUE in the 1986 rating decisions.

In February 2019, the Board denied Keys' motion.  The Board rejected Keys' allegation that the 1986 rating decisions erred in not considering service connection and separate compensable ratings for headaches, dizziness, and a right eye disorder.  The Board found that the claimed conditions—including by extension a claim for TDIU benefits—had been implicitly denied in the 1986 rating decisions, and that those decisions were final.

In April 2019, Keys submitted correspondence construed as a motion for reconsideration of the Board decision.  The Board denied the motion.  Keys then appealed to the Veterans Court, arguing that the 1986 rating decisions contained CUE.  He further argued that his benefits should have been made retroactive to 1985.  The court considered Keys' arguments but found that the position he urged deviated from the rules of finality and effective dates for the RO decisions.  The court then examined the Board's CUE analysis and held that the Board did not abuse its discretion in finding no CUE.  The court then affirmed the Board's decision.  Subsequently, Keys filed a motion for reconsideration that the court denied.

Keys then filed the present notice of appeal to this court.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited.  We may review the validity of a decision with respect to a rule of law or interpretation of a statute or regulation that was relied upon by the Veterans Court in making its decision.  38 U.S.C. § 7292(a).  However, except with respect to constitutional issues, we may not review challenges to factual determinations or challenges to

the application of a law or regulation to the facts of a case. 38 U.S.C. § 7292(d)(2).

In reviewing a Veterans Court decision, we decide "all relevant questions of law, including interpreting constitutional and statutory provisions," and set aside any interpretation thereof "other than a determination as to a factual matter" relied upon by the Veterans Court that we find to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, limitations, or in violation of a statutory right; or (D) without observance of procedure required by law."  38 U.S.C. § 7292(d).  We review questions of statutory and regulatory interpretation *de novo*.  *Mayfield v. Nicholson*, 499 F.3d 1317, 1321 (Fed. Cir. 2007) (citing *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991)).

Keys argues that the Board and Veterans Court failed to properly evaluate his CUE allegations or assess the evidence and, thus, committed legal error.  He specifically disputes the Board's factual findings and its application of law to the facts of his case.  Additionally, Keys appears to assert that the Board's failure to grant an earlier effective date indicates misconduct by the RO and the Board.  *See, e.g.*, Replacement Appellant Br. at 20 ("The Board in remanding the June 2009 RO CUE claim to prevent [Keys] the right to bring [his] December 18, 2008 claim to correct the damages the RO had done to [him] was a crime."); *id.* at 10–11 ("The facts in evidence [suggest that] these statements were hidden by way of orchestrating unlawful actions to keep these

facts hidden from a probable review by the [Veterans Court].").[1]

The government responds that we lack jurisdiction to hear this appeal because the Veterans Court did not interpret any statute or regulation but instead applied established law to the facts. Regarding Keys' misconduct argument, the government argues that Keys' assertions are baseless and do not constitute the "well-nigh irrefragable proof" required to show that government employees were not acting in good faith. *See Sanders v. United States Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986).

We agree with the government. The Veterans Court did not opine on the meaning of any statute, regulation, or otherwise make a legal interpretation. It instead applied established law and reviewed the Board's findings of fact for clear error. Keys contends that the Board and the court failed to properly evaluate his CUE allegations or assess the evidence and, thus, committed legal error. However, Keys' arguments focus on the weight that he believes should have been accorded to the evidence of record, not to any interpretation of a statute or its implementing regulations. *See, e.g.*, Replacement Appellant Br. at 2, 5 (alleging that the Board and the Veterans Court failed to properly construe Keys' claim and that only limited review of evidence was ever made, and that relevant evidence was not reviewed); *id.* at 11 ("Under the VA rules of [CUE], the evidence that [Keys] submitted to the [RO] . . . should have been accepted and used as evidence.").

The conclusions reached by the Veterans Court were purely factual, requiring an assessment whether the Board's conclusions were supportable based on the

---

[1]    Because the page numbering in Keys' replacement brief is internally inconsistent, we refer to the page numbers generated by CM/ECF, our electronic filing system.

evidence of record.  Thus, those conclusions are outside of our limited jurisdiction, and we must dismiss this appeal. *See Andino v. Nicholson*, 498 F.3d 1370, 1373 (Fed. Cir. 2007) ("In this decision we are not making credibility determinations or weighing evidence—all of which is beyond our jurisdiction."); *Githens v. Shinseki*, 676 F.3d 1368, 1371–72 (Fed. Cir. 2012) (noting that the Veterans Court's determination regarding whether something was CUE was outside the court's jurisdiction).

Regarding Keys' putative legal argument that the Board's failure to grant an earlier effective date constitutes misconduct, allegations of bad faith cannot give us jurisdiction to review questions of fact or the application of law to fact, absent a constitutional issue.  Moreover, government employees are presumed to act in good faith, and we agree with the government and hold that Keys' bare assertions do not constitute the proof required to show that government employees were not acting in good faith.  *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (holding that "the clear and convincing standard most closely approximates the language traditionally used to describe the burden for negating the good faith presumption").

## CONCLUSION

We have considered Keys' remaining arguments, but we find them unpersuasive.  For the foregoing reasons, we *dismiss* his appeal for lack of jurisdiction.

## DISMISSED

## COSTS

No costs.