**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| STEFAN L. TIMMONS,<br>　　　　　Appellant, | DOCKET NUMBER<br>CH-0752-16-0331-I-1 |
| 　　　v. | |
| DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　　Agency. | DATE: February 2, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Bobby R. Devadoss</u>, Esquire, and <u>Stephanie Bernstein</u>, Esquire, Dallas,
　　Texas, for the appellant.

<u>Jill Russell</u> and <u>Kevin B. Marsh</u>, Detroit, Michigan, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

　　The agency has filed a petition for review of the initial decision, which reversed the appellant's removal.  For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the administrative judge's finding that the agency failed to prove its charge of conduct unbecoming, AFFIRM the

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

administrative judge's findings that the agency failed to prove its charges of lack of candor, failure to seek approval for outside employment, and failure to follow supervisory instructions, and SUSTAIN the appellant's removal based on the sustained conduct unbecoming charge.

## BACKGROUND

The appellant is a Customs and Border Patrol Officer at the agency's U.S. Customs and Border Protection's Detroit Port of Entry. Initial Appeal File (IAF), Tab 5, Subtab 4(a). In May 2011, the agency approved the appellant's request for outside employment to run an online business selling adult novelty products. *Id.*, Subtab 4(g) at 41-43. Effective March 18, 2016, the agency removed him from his position based on charges of conduct unbecoming, lack of candor, failure to seek approval for outside employment, and failure to follow supervisory instructions. *Id.*, Subtabs 4(a)-(b), (d). The conduct unbecoming charge was based on 15 specifications in which the agency alleged that the appellant engaged in various unprofessional behavior, including, among other things, making inappropriate comments to female coworkers, giving a sexually suggestive gift to a female coworker, showing inappropriate pictures of scantily clad women to coworkers, and engaging in a verbal altercation with a supervisor. IAF, Tab 5, Subtab 4(d) at 1-3.

The lack of candor charge was supported by two specifications alleging that the appellant was not fully forthcoming during an internal affairs interview regarding the conduct described above. *Id.* at 3. In its failure to seek approval for outside employment charge, the agency alleged that, although the appellant had obtained approval for his outside business, he failed to seek re-approval after the nature of the business changed. *Id.* at 3-4. The failure to follow supervisory instructions charge was supported by two specifications in which the agency alleged that the appellant refused to leave a training session after becoming

disruptive, despite being asked to do so three times, and failed to provide a memorandum regarding the incident within the prescribed deadline. *Id.* at 4.

The appellant filed a Board appeal, disputing the charges. IAF, Tab 1. After the appellant withdrew his request for a hearing, IAF, Tab 30, the administrative judge issued a decision based on the written record, IAF, Tab 40, Initial Decision (ID). The administrative judge reversed the agency's action, finding that the agency failed to prove any of its charges or any of its specifications in support of its charges. ID at 3-32.

The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant has opposed the agency's petition for review. PFR File, Tab 6. The agency has filed a reply. PFR File, Tab 9.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency has complied with the interim relief order.

As a preliminary matter, we address the appellant's allegation that the agency failed to provide him interim relief. On July 13, 2017, the appellant filed a pleading titled petition for enforcement, in which he asserts that the agency withheld his back pay and failed to pay him what it owes him in full. PFR File, Tab 11. The Board's regulations do not provide for petitions for enforcement of interim relief orders; such petitions apply only to final Board decisions. 5 C.F.R. § 1201.182(a). The Board's regulations, however, do allow an appellant to challenge an agency's certification that it has provided interim relief, and the Board may dismiss a petition for review if it finds the agency to be in noncompliance with its interim relief obligations. 5 C.F.R. § 1201.116(b), (e).

When an initial decision grants the appellant interim relief, any petition for review must be accompanied by a certification that the agency has complied with the interim relief order. *See* 5 C.F.R. § 1201.116(a). To comply with an interim relief order, the agency is only required to take appropriate administrative action by the deadline for filing the petition for review that will result in the issuance of

a paycheck for the interim relief period and is not necessarily required to have paid the appellant by the deadline. *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 13 (2014). The administrative judge ordered the agency to provide the appellant interim relief, effective as of the date of the decision, including effecting his appointment with pay and benefits. ID at 33.

Here, with its petition for review, the agency provided a certificate of compliance with the interim relief order, stating that it had effected the appellant's appointment to the Customs and Border Patrol Officer position as of April 18, 2017, the effective date of the initial decision. PFR File, Tab 1 at 29. In addition, the appellant's motion includes correspondence from the agency indicating that, as of June 6, 2017, his interim payment was in process for the period from April 18, 2017, through pay period 17-10. PFR File, Tab 11 at 8.

To the extent that the appellant is seeking back pay as of March 18, 2016, the effective date of his removal, *id.* at 6, interim relief provisions do not require the agency to grant the appellant back pay or other benefits to make him whole at the interim relief stage of the proceedings. *Reid v. Department of the Navy*, 118 M.S.P.R. 396, ¶ 6 n.2 (2012). Rather, the agency is only required to give the appellant an interim appointment with pay and benefits effective as of the date of the initial decision. *See* 5 U.S.C. § 7701(b)(2)(A) (providing for an award of interim relief "effective upon the making of the [initial] decision, and remaining in effect pending the outcome of any petition for review"); *see also Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶¶ 7-8, *aff'd*, 625 F. App'x 549 (Fed. Cir. 2015), *and overruled on other grounds by Haas v. Department of Homeland Security*, 2022 MSPB 36; *Dunn v. Department of the Air Force*, 96 M.S.P.R. 166, ¶ 8 n.3 (2004), *aff'd*, 139 F. App'x 280 (Fed. Cir. 2005); 5 C.F.R. § 1201.116(f).

Thus, the agency was only required to provide pay and benefits starting on April 18, 2017, the date on which the initial decision was issued. As the appellant does not appear to dispute that the agency has taken steps to process the

required interim relief, we deny the appellant's request for relief in this regard, and we will consider the agency's petition for review.

The agency's motion to admit video evidence is denied.

The agency has filed a motion to admit evidence of 15 videotaped depositions of its witnesses. PFR File, Tab 7. In its motion, the agency asserts that the administrative judge's decision to exclude such evidence was erroneous and prejudicial. *Id.* at 4-7. It is well settled that an administrative judge has broad discretion to control the proceedings before her. *Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 21 (2015); 5 C.F.R. § 1201.41. Rulings concerning the exclusion of evidence are subject to review by the Board under an abuse of discretion standard. *Lopes v. Department of the Navy*, 119 M.S.P.R. 106, ¶ 11 (2012). In rejecting the videotaped depositions, the administrative judge found that her considering the videotaped depositions would contravene the appellant's request for a decision on the written record and would be duplicative because written transcripts of the video testimony were part of the record. IAF, Tab 39. She also noted that her decision would not prejudice the agency because the agency has no right to a hearing. *Id.*; *Callahan v. Department of the Navy*, 748 F.2d 1556, 1559 (Fed. Cir. 1984). Finally, she expressed concern that it would not be proper for her to make demeanor-based credibility determinations based on testimony that was not subject to cross-examination. IAF, Tab 39. We find that the administrative judge did not abuse her discretion in excluding the videotaped depositions.

For the reasons set forth by the administrative judge, we similarly decline to consider the videotaped depositions for the first time on review. Accordingly, the agency's motion is denied. Although we do not consider the videotaped depositions, we have considered the written transcripts of them. Further, our decision to deny the agency's motion is not prejudicial to the agency because, as set forth below, the agency's failure to prove certain charges or specifications is not related to any credibility determinations, but rather its failure to prove the

elements of its charge, provide sufficient evidence to support its charge, or explain how or why certain behavior by the appellant was improper.

<u>The agency proved its charge of conduct unbecoming.</u>

The administrative judge found that the agency failed to prove any of its 15 specifications in support of its conduct unbecoming charge. ID at 4-32. On review, the agency challenges the administrative judge's findings concerning each specification. PFR File, Tab 1 at 10-22. Because the administrative judge's findings are based on the written record, the Board is free to reweigh the evidence and make its own findings without deferring to the administrative judge's credibility findings. *See Deskin v. U.S. Postal Service*, 76 M.S.P.R. 505, 510 (1997) (finding that the Board may substitute its own credibility determinations for an administrative judge's explicit or implicit credibility findings when such findings are not based on the demeanor of witnesses); *see also Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002).

As set forth below, based on our review of the record, we find that the agency has proven specifications 3, 4, 7, 9, 10, and 11. Further, we find the agency's proof of these specifications is sufficient to sustain the charge of conduct unbecoming. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (finding that, when more than one event or factual specification supports a single charge, the agency need not prove all of the specifications; rather, proof of one or more of the supporting specifications is sufficient to sustain the charge). In support of our finding that the agency proved these six specifications, we note that the appellant admitted to some of the misconduct underlying these specifications. *See Chavez v. Small Business Administration*, 121 M.S.P.R. 168, ¶ 5 (2014).

*Specification 3*

In specification 3, the agency alleged that the appellant gave A.P., a female Border Patrol Agent (BPA), a gift of "Karma Sutra"[2] body wash after she left the Tucson Sector gym. IAF, Tab 5, Subtab 4(d) at 1. The agency contends that this was not professional and made A.P. feel uncomfortable. *Id.* at 2. The agency further contends that, following this incident, the appellant had additional interactions with A.P. which made her feel uncomfortable, including hovering over her while she was filling out a leave request and asking her to meet in the middle of a shift at mile marker 8 in the Buenos Aires National Park. *Id.*

In her deposition testimony, A.P. indicates that the appellant gave her the body wash when she was leaving the gym on the Border Patrol compound. IAF, Tab 32 at 60. She viewed it as an inappropriate and suggestive gift and was uncomfortable receiving it from a coworker whom she had only just met. *Id.* at 61, 63. She reported it to her supervisors that same day but did not file a formal complaint, opting instead to return the body wash to the appellant and inform him to keep his interactions with her professional. *Id.* at 62-63. Following this incident, she contends that 2 weeks later, after muster,[3] the appellant asked her if she would meet him at mile marker 8 in the Buenos Aires National Wildlife Refuge. *Id.* at 66. She states that she found this request unusual because they were not assigned to the same location, the locations they were assigned to were far apart with rough terrain in between, to meet up at mile marker 8 would have required the appellant to go outside of his assigned area, and there was no work-related purpose for them to meet there. *Id.* at 66-69. Finally, she states that on another occasion around this time, the appellant

---

[2] It is unclear whether this was the name of the bodywash or a misnomer incident to the reporting. IAF, Tab 32 at 11 n.5. The question, however, is immaterial because, in either case, the reference to the Kama Sutra is clear.

[3] Muster is when agents meet and are given assignments and information before they go out to the field. IAF, Tab 32 at 130.

assisted her unsolicited with filling out a leave request on the computer, hovered over her in her personal space, and lingered too long. *Id.* at 63-65.

A.H., a Supervisory BPA, confirms that A.P. asked him for guidance after she received the body wash from the appellant. In his affidavit, he indicates that he told A.P. that, if she wanted to return the body wash, she should feel free to do so and there would be no adverse effects to her career. IAF, Tab 5, Subtab 4(g) at 192. He further indicates that a few weeks later, A.P. reported to him that the appellant seemed to be interested in a personal relationship with her, she had tried to make it clear that she was not interested, but he persisted in pursuing her. *Id.* Following the appellant's second discussion with A.P., A.H. spoke to the appellant and told him that A.P. was not interested in a personal relationship and asked him to keep his relationship with her professional. *Id.*

The appellant admits that he gave A.P., a new agent, a gift of a bottle of the Karma Sutra body wash he sold on his adult novelty website. IAF, Tab 5, Subtab 4(g) at 237. He also admits that she later returned it to him but disputes that she told him to act professionally around her. *Id.* at 238. He also admits that he had an interest in pursuing a personal relationship with A.P. IAF, Tab 25 at 30. Although he disputes that A.P. told him to act professionally around her when she returned the body wash, given the context, we credit her account.[4] Moreover, her statements in her memorandum, affidavit, and deposition all consistently state that, after speaking with her supervisor, she returned the gift to the appellant, and told him it was inappropriate and that he needed to act in a more professional manner. IAF, Tab 5, Subtab 4(g) at 26, 113-17, Tab 32 at 60-63. In any event, after A.P. returned the gift, the appellant should have

[4] In assessing the probative value of hearsay testimony, we have considered the factors set forth in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981), which include: the availability of persons with firsthand knowledge to testify at the hearing, whether the out-of-court statements were sworn, whether the declarants were disinterested witnesses to the events and whether their statements were routinely made, the consistency of the out-of-court statements with other statements and evidence, whether there is corroboration or contradiction in the record, and the credibility of the out-of-court declarants.

ascertained that it was an inappropriate gift for a coworker and that A.P. was not interested in a personal relationship. Despite this, he continued to pursue her, requiring A.H. to intervene. Thus, we find that the appellant's interactions were not professional.

*Specification 4*

In specification 4, the agency charged the appellant with asking S.R., a female BPA, to go to his house and pose for pictures, calling her "baby," and, in a separate incident a week later, showing her pictures of scantily clad and provocatively posed women and calling her a prude. IAF, Tab 5, Subtab 4(d) at 2. S.R. asserts that, about the winter of 2013, she was assigned to patrol the same area as the appellant. *Id.* at 29. She recalls he pulled up next to her in her truck and made brief small talk before eventually asking if she was married and if she would be interested in coming over to his house to pose for pictures and at some point called her "baby." *Id.* She recounts that, a week later, while assigned to the highway 286 checkpoint with the appellant, he took out his cell phone and showed her photos he had taken of other women posing provocatively wearing only lingerie-type clothing. *Id.* at 133. The appellant admits that he called S.R. "baby" and showed her pictures of scantily clad women, but he disputes that he asked her to come to his house to pose for pictures or that he called her a prude. *Id.* at 239-40. In light of the appellant's admissions, we find that the agency has proven that the appellant showed S.R. pictures of scantily clad women and called her "baby."

Applying the criteria for assessing the probative value of hearsay testimony, we credit S.R.'s account that the appellant asked her to come to his house to pose for pictures. *See Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981). S.R. has consistently maintained that this happened in her June 16, 2014 memorandum, her September 11, 2014 affidavit, and her January 18, 2017 deposition. IAF, Tab 5, Subtab 4(g) at 29, 132-36, Tab 32 at 74-81. Although there are some minor discrepancies in her deposition, such as

whether the appellant called her "baby" or "hot" during this interaction, this appears to be due to the 4-year lapse in time between the date the incident occurred and the date of S.R.'s deposition. Regardless, whether the appellant called her "hot" or "baby" is of no consequence because either would be inappropriate.

In addition, we afford less weight to the appellant's affidavit because he admits that he called S.R. "baby," which partially corroborates S.R.'s version of that encounter. Additionally, the appellant fails to explain in detail when or why he called her "baby" or to describe his interactions with S.R. in sufficient detail to refute her version of events. IAF, Tab 33 at 40-41. Finally, nothing suggests that S.R. has any bias against the appellant.

*Specifications 7 and 10*

In specification 7, the agency alleges that the appellant engaged in unprofessional conduct when he looked at D.F., a female mission support assistant, in a sexually appraising manner. IAF, Tab 5, Subtab 4(d) at 2. Similarly, in specification 10, the agency alleges that the appellant looked at J.R., a female BPA, in a sexually appraising manner and told her, "you look mighty fine for just having a baby," while licking his lips. *Id.*

D.F. describes an incident in which a firearms trainer stopped her to ask her some questions. During their conversation, she looked over and saw the appellant sitting in a chair nearby leaning back with his legs up, hand on his face, looking at her from head to toe, and licking his lips. IAF, Tab 32 at 104-06. J.R. similarly describes an incident in which she encountered the appellant for the first time when she was walking in the hallway between the seized property building and the Tucson station. *Id.* at 160. The appellant indicated that he had not seen her before and she told him she just had a baby and was recently back from maternity leave. *Id.* In response, he stated, "you look mighty fine for just having a baby," while licking his lips and looking her up and down. *Id.* The appellant states that he does not recall the interaction with D.F. IAF, Tab 25 at 29. He also

denies J.R.'s characterization of the incident and asserts that he only spoke with J.R. on one occasion when he asked her about her baby because she had a newborn baby with her. IAF, Tab 33 at 44.

In light of the similarities between D.F.'s and J.R.'s accounts and the lack of any discernable bias against the appellant, we credit their version of events and find that the agency proved both of these specifications. *See Borninkhof*, 5 M.S.P.R. 77 at 87 (identifying the factors for assessing the probative value of hearsay testimony to include the consistency of the declarants' accounts with other information in the case as well as their consistency with each other).

*Specification 9*

In this specification, the agency alleged that on June 2, 2014, while on duty, the appellant engaged in a verbal altercation with E.G., a supervisory BPA, in which he was physically aggressive and had to be physically restrained. IAF, Tab 5, Subtab 4(d) at 2. According to E.G., he had asked the appellant to come to his office to talk to him. *Id.*, Subtab 4(i) at 6. Shortly thereafter, the appellant came to his office accompanied by S.M., another supervisory BPA. *Id.* E.G. was seated at his desk talking to J.M., another supervisory BPA. *Id.* E.G. asked the appellant if he could step outside so that he could talk to S.M. before speaking to the appellant. *Id.* The appellant immediately started yelling and pointing at him. *Id.* He started to ask the appellant to step out again but stopped because of the appellant's demeanor. *Id.* The appellant was pointing at him and loudly yelling at him that E.G. was trying to influence junior agents. *Id.* Eventually, S.M. and J.M. restrained the appellant as he was getting closer to E.G., and S.M. repeatedly tried to engage the appellant verbally to de-escalate the situation. *Id.* Eventually S.M. and J.M. were able to physically direct the appellant out of E.G.'s office. *Id.* at 6-7. In his deposition, E.G. gave a similar account and stated that he felt concerned for his safety and was prepared to defend himself against the appellant, who is an armed agent of larger physical stature than him. IAF, Tab 32 at 111-24.

S.M. and J.M. both confirm that the appellant raised his voice and yelled at E.G., something to the effect that E.G. was using his power to intimidate subordinate agents against the appellant, they had to de-escalate the situation by stepping between the appellant and E.G., and S.M. had to physically guide him out of the office. IAF, Tab 5, Subtab 4(i) at 8-11, Tab 32 at 128-54. They also both indicate that, as a result of the yelling, other supervisors and agents came to see what was happening. IAF, Tab 5, Subtab (4)(i) at 8-10. In addition, they both described the appellant's demeanor and posture as concerning, rigid, and angry, and expressed a belief that, had they not intervened, a physical altercation would have occurred between the appellant and E.G. IAF, Tab 32 at 133-35, 148-49. S.M. also indicated that he feared for E.G.'s safety. *Id*. at 135.

The appellant portrays a very different scenario in which he contends that E.G. bullied and denigrated him and asked him to come to his office where he yelled at the appellant, causing the appellant to worry for his own safety. IAF, Tab 33 at 43-44. However, in light of their detailed and consistent accounts, we afford greater weight to the statements and testimony of the agency's witnesses than those of the appellant. Further, S.M., from whom the appellant sought assistance, and J.M. appear to be disinterested witnesses who corroborate the relevant portions of E.G.'s account of the appellant's conduct. Accordingly, we find that the agency proved this specification.

*Specification 11*

In this specification, the agency alleges that, while on duty, the appellant showed D.D., a male BPA, a cover photo for his adult magazine of a female posing in a bathing suit. IAF, Tab 5, Subtab 4(d) at 2. D.D. testified that the appellant brought up his business and wanted to get D.D.'s opinion on a photo of a female posing in a bathing suit for a proposed magazine cover. IAF, Tab 32 at 172. D.D. found this behavior unprofessional and tried to steer the conversation back to talking about their kids. *Id*. at 173. The appellant admits that this occurred, but he contends that D.D. asked to see a photo, and so he

showed it to him at his request. IAF, Tab 33 at 44. We credit D.D.'s account because it is consistent with the appellant's behavior in another charged specification, when he showed pictures he had taken for his outside business to S.R., also for the purpose of getting her opinion. *Supra* p.9. Accordingly, we find that the agency proved this specification.

The agency failed to prove the remaining specifications of its conduct unbecoming charge.

Regarding specification 1, the agency disputes the administrative judge's finding that it failed to prove that the appellant acted unprofessionally when he informed M.L., a female BPA, that he was going to meet a lady to take pictures of her for his website. PFR File, Tab 1 at 10-11. The administrative judge found that such comments were not unprofessional based on M.L.'s description of the interaction in which she indicated that the appellant mentioned the appointment and stated that the pictures would be tasteful, not nude. ID at 5-6. The administrative judge noted that M.L. did not report the incident, which M.L. viewed as the appellant being "naïve" and "kind of dumb." ID at 6. The administrative judge further found that the agency did not charge the appellant with soliciting business while on duty. *Id.* We discern no error in the administrative judge's analysis. Nothing in the appellant's outside work authorization indicates that he was prohibited from discussing his outside business. IAF, Tab 5, Subtab 4(g) at 41-42. Nor does the record reflect that this was a detailed conversation that crossed the line into improper or unprofessional conduct.

The agency contends that the administrative judge misconstrued specification 2, which charged the appellant with sending K.S., a female contractor, personal and suggestive text messages that were unprofessional and not work related. PFR File, Tab 1 at 11. We have reviewed the text messages and discern no error in the administrative judge's finding that the agency failed to explain how such text messages were suggestive or improper, particularly in light

of the fact that the agency did not charge the appellant with using Government property to send the texts or with texting while on duty. ID at 7-8. The agency also contends that the administrative judge failed to consider that, according to K.S., the appellant repeatedly appeared at her car making her feel uncomfortable. PFR File, Tab 1 at 11. However, the agency did not reference any such behavior in this specification. IAF, Tab 5, Subtab 4(d) at 1. The Board may not impose discipline based on a charge that the agency could have brought, but did not. *See Leaton v. Department of the Interior*, 65 M.S.P.R. 331, 338 (1994), *aff'd*, 64 F.3d 678 (Fed. Cir. 1995) (Table); *see also Minor v. U.S. Postal Service*, 115 M.S.P.R. 307, ¶ 10 (2010) (stating that the Board is required to review an agency's decision on an adverse action solely on the grounds invoked by the agency).

Regarding specifications 5 and 6, the agency disputes the administrative judge's findings that it failed to prove that the appellant solicited business for his outside adult novelties website while on duty or on Government property. PFR File, Tab 1 at 14-15. The administrative judge found that the discussion regarding the appellant's business set forth in specification 5 was more accurately characterized as idle conversation than as a solicitation because it arose during a conversation with A.B., a female BPA, who asked the appellant questions about his personal life that led to a discussion of his business. ID at 13-14. We discern no error in the administrative judge's analysis.

In specification 6, the agency charged the appellant with telling D.F., a female Mission Support Assistant, that he personally designed and sold shoes, and subsequently texting her a link to his company's website. IAF, Tab 5, Subtab 4(d) at 2. The administrative judge found that the first conversation in which the appellant told D.F. he designed shoes and would design a pair for her was not accurately characterized as a solicitation because it was not clear that the appellant was trying to sell her shoes. ID at 14-15. The administrative judge also found that the subsequent text messages exchanged did not occur while the appellant was on duty. ID at 15. We discern no error in the administrative

judge's analysis. Further, the appellant denies that his intent was to solicit business from D.F., and instead he contends that he struck up this conversation because he wanted to date her. IAF, Tab 25 at 28, Tab 33 at 42. The off-duty text messages appear to support his claim to the extent they reflect that the appellant only sent the link to his website after D.F. asked him to, stopped texting D.F. after she informed him that she was in a relationship, and never followed up to try to sell her shoes or other merchandise. IAF, Tab 5, Subtab 4(h) at 10-16.

Regarding specification 8, the agency disputes the administrative judge's finding that it failed to prove that the appellant watched sexually explicit material while on duty. PFR File, Tab 1 at 16-17. The agency contends that the administrative judge erred in requiring it to prove that the appellant was watching pornography. *Id.* However, we agree with the administrative judge that the distinction is material. In any event, we agree that the agency failed to prove the appellant was watching sexually explicit material. The appellant contends that he was watching an R-rated movie. IAF, Tab 25 at 36. Although the female BPA who reported the incident described what the appellant was watching as softcore pornography, she did not actually see what the appellant was watching, but rather, she overheard what she characterized as language of a sexual nature.[5] IAF, Tab 5, Subtab 4(g) at 101, Tab 32 at 109-10. Further, as the administrative judge noted, the agency did not contend that it was improper for the appellant to watch television while on duty. ID at 17.

Regarding specifications 12 and 13, the agency disputes the administrative judge's finding that it failed to show that the appellant's interactions with C.E. and C.F., two female Transportation Security Administration employees, were unprofessional, impolite, or disrespectful. PFR File, Tab 1 at 19-20. Regarding

---

[5] Although we do not sustain this specification, the Board does not condone employees viewing sexually explicit material while on duty and has sustained removals of employees based on similar charges when proven. *See, e.g., Von Muller v. Department of Energy,* 101 M.S.P.R. 91, ¶ 23 (finding that the penalty of removal was reasonable for an employee's use of a Government computer to send and receive sexually explicit images via email), *aff'd,* 204 F. App'x 17 (Fed. Cir. 2006).

C.E., the agency alleged that, during training at the Federal Law Enforcement Training Center, the appellant commented on her shoe size after she indicated she was going shoe shopping and stated that her feet looked small. IAF, Tab 5, Subtab 4(d) at 3. He also later approached her and told her that he had asked his classmates about her. *Id.* Regarding C.F., the agency alleged that he said "hello" and patted her on the arm, a few minutes later told her that he saw her walking from the dorm the night before, and subsequently approached her on two other occasions. *Id.* We recognize the difficulty in establishing reasonable guidelines for appropriate social behavior among coworkers and acknowledge that the appellant's overly friendly interactions with these employees may have caused them to feel uncomfortable. However, we agree with the administrative judge that the agency failed to prove that these interactions were unprofessional, impolite, or disrespectful under the particular facts of this case.

Regarding specifications 14 and 15, the agency contends that the appellant displayed unprofessional and angry behavior, loudly tapped a computer keyboard, and angrily slammed a computer mouse during a role-playing exercise. IAF, Tab 5, Subtab 4(d) at 3. The agency contends that the administrative judge summarily declined to sustain the appellant's alleged unprofessional behavior because he was engaging in role play at the time without considering the effect of the appellant's behavior. PFR File, Tab 1 at 21-22. However, we agree with the administrative judge that it was improper for the agency to ask the appellant to engage in role play, characterize that role play as unprofessional, and then cite it in support of a removal charge. ID at 23.

## The agency failed to prove its remaining charges.

In its lack of candor charge, the agency charges the appellant with failing to be fully forthcoming in an internal interview when he denied having solicited employees while at work for his outside business and denied watching softcore pornography while at work. IAF, Tab 5, Subtab 4(d) at 3. However, we agree with the administrative judge that the agency failed to prove that the appellant

solicited business for his outside business or that he watched sexually explicit material while on duty. Thus, the agency failed to prove its lack of candor charge. *See Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 16-17 (2016) (finding that a lack of candor charge involves an element of deception and requires proof of two elements: (1) that the employee gave incorrect or incomplete information; and (2) that he did so knowingly).

Regarding the failure to seek approval for outside employment, the agency charged the appellant with failing to submit a new written request for approval of his outside employment when the nature of his business changed from maintaining a website to sell adult novelties to include photographing models to market the products he sold online and to establish a new online magazine. *Id.* at 3-4. The administrative judge found that the agency failed to show that the appellant knew that he was required to submit a new request for approval of these new business expansions. ID at 29. She found that the agency's May 2011 approval letter did not inform him of such a requirement, nor did any agency regulation specify such a requirement. *Id.*

On review, the agency argues that such findings were erroneous and the appellant was on notice based on a signed agency form 3031 request to engage in outside employment or business activities in which he certified that he would submit a new request for approval "if the nature of [his] employment or business change[d]." PFR File, Tab 1 at 24. We find such a standard to be too ambiguous to put the appellant on notice that he was to submit another request for approval under the circumstances charged by the agency. Accordingly, we agree with the administrative judge that the agency failed to prove this charge.

Regarding the failure to follow supervisory instructions charge, the agency charged the appellant with failing to leave a training session that he had disrupted after having been unintentionally kneed in the groin. IAF, Tab 5, Subtab 4(d) at 4. The agency contends that the appellant did not comply with instructions to leave after being asked three times to do so and having to be walked out. *Id.* The

agency also charged the appellant with failing to timely submit a memorandum regarding his disruption during the training session as instructed. *Id.* We agree with the administrative judge that the evidence fails to establish that the appellant had to be walked out of the training session. ID at 30. Regarding the memorandum, the administrative judge found that the individual who instructed the appellant to write the memorandum testified that he could not recall what deadline he imposed for the appellant to submit it. ID at 31. She further found that the agency failed to prove that it provided the appellant with proper instructions regarding how to turn in the memorandum to the required individual, who was not scheduled to teach the appellant for the next 5 days. *Id.* We discern no error in the administrative judge's analysis.

## There is a nexus between the sustained misconduct and the efficiency of the service.

The agency also must prove by preponderant evidence that its action promotes the efficiency of the service. *See* 5 U.S.C. § 7513(a); *Booker v. Department of Veterans Affairs*, 110 M.S.P.R. 72, ¶ 12 (2008). However, it is well settled that there is a sufficient nexus between an employee's conduct and the efficiency of the service when, as here, the conduct occurred on agency premises and while the appellant was on duty. *See, e.g.*, *Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006); *Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 60 (2004) (finding nexus when the misconduct included, among other things, using inappropriate terms when addressing female coworkers), *aff'd*, 176 F. App'x 110 (Fed. Cir. 2006). Therefore, we find that the agency has proven that a nexus exists between the appellant's misconduct and the efficiency of the service.

## The penalty of removal is reasonable in light of the sustained charge.

When an agency fails to prove all of its charges, the Board must consider carefully whether the sustained charges merit the penalty imposed by the agency. *Reid*, 118 M.S.P.R. 396, ¶ 24. In such circumstances, if the agency does not

indicate that it desires a lesser penalty to be imposed on fewer charges, the Board may mitigate to the maximum reasonable penalty if a careful balancing of the mitigating factors warrants, or the Board may impose the same penalty imposed by the agency based on justification of that penalty as the maximum reasonable penalty after balancing those factors. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999); *Parker v. U.S. Postal Service*, 111 M.S.P.R. 510, ¶ 6, *aff'd*, 355 F. App'x 410 (Fed. Cir. 2009).

Here, the agency did not indicate a desire that a lesser penalty be imposed for fewer charges. Rather, the deciding official testified that he would have removed the appellant based on the conduct unbecoming charge alone. IAF, Tab 32 at 247-48. We find that the deciding official properly considered the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), and that the penalty of removal is reasonable in light of the sustained charge. The deciding official testified that removal would have been warranted based on the conduct unbecoming charge alone due to the serious, intentional, and repetitive nature of the appellant's inappropriate interactions with female employees.[6] IAF, Tab 32 at 247. He also expressed concern regarding the appellant's temperament, noting that officers are on the front lines interacting with the public and perform their duties and responsibilities without direct supervision. *Id.* at 248-49. Thus, he was concerned about the appellant's ability to remain calm, polite, and professional in the face of provocation on the front lines. *Id.* Finally, he emphasized that the appellant's misconduct was especially unacceptable because, as a law enforcement officer, he is held to a higher standard of conduct. IAF, Tab 5, Subtab 4(b) at 1, Tab 32 at 244.

The deciding official also considered the appellant's 7 years of Federal service, satisfactory performance, and his admission during his oral reply that he

---

[6] An indication of the seriousness of the appellant's misconduct is a supervisory BPA's sworn statement indicating that he and other shift supervisors had adjusted scheduling so as not to assign the appellant to work with J.P., S.R., or, if possible, any other female employees. IAF, Tab 5, Subtab 4(g) at 193.

may have been overly aggressive pursuing female employees as mitigating factors, but found they did not outweigh the seriousness of his misconduct. IAF, Tab 32 at 243, 246. The deciding official also considered the appellant's prior 2-day suspension for misuse of his position when he solicited the wife of a BPA for his outside employment and used his position as a BPA to vouch for his reliability. *Id.* at 243. Considering the appellant's status as a law enforcement officer, the fact that his position involves working unsupervised with female BPAs in remote locations, the numerous affidavits from female employees indicating that they did not feel comfortable working with the appellant, and keeping in mind the employing agency's primary discretion in assessing penalties, we find that removal does not exceed the tolerable limits of reasonableness for the sustained misconduct. *See Todd v. Department of Justice*, 71 M.S.P.R. 326, 330 (1996) (recognizing that law enforcement officers are held to a high standard of conduct). Accordingly, we sustain the agency's removal action.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:            _____
                          Gina K. Grippando
                          Clerk of the Board
Washington, D.C.